# EXHIBIT C

U.S. DEPARTMENT OF THE INTERIOR **BUREAU OF LAND MANAGEMENT**
Wyoming
Print Page

<< Back to Onshore Operations

UNITED STATES
DEPARTMENT OF THE INTERIOR
GEOLOGICAL SURVEY
Conservation DIVISION

**Notice to Lessees and Operators of Onshore
Federal and Indian Oil and Gas Leases
(NTL-4A)**

**Royalty or Compensation for Oil and Gas Lost**

This Notice is issued pursuant to the authority prescribed in the Oil and Gas Operating Regulations, Title 30 CFR 221, and in accordance with the terms of the Federal and Indian oil and gas leases under the jurisdiction of the Geological Survey. This Notice supersedes certain provisions of NTL-4, issued effective December 1, 1974; Supplement No. 1 to NTL-4, issued effective December 1, 1978, to 10 lessees and operators on a nationwide basis; and Supplement No. 1 to NTL-4, issued effective December 1, 1978, to all lessees and operators in Wyoming. Lessees and operators who submitted payments for royalty on oil and gas lost under these provisions of NTL-4, which are hereby revoked, may file with the Area Oil and Gas Supervisor (Supervisor) an application for a refund of those payments in accordance with the addendum attached to this Notice.

I. GENERAL

Oil production subject to royalty shall include that which (1) is produced and sold on a lease basis or for the benefit of a lease under the terms of an approved communitization or unitization agreement and (2) the Supervisor determines to have been avoidably lost on a lease, communitized tract, or unitized area. No royalty obligation shall accrue as to that produced oil which (1) is used on the same lease, same communitized tract, or same unitized participating area for beneficial purposes or (2) the Supervisor determines to have been unavoidably lost.

Gas Production (both gas well gas and oil well gas) subject to royalty shall include that which is produced and sold on a lease basis or for the benefit of a lease under the terms of an approved communitization or unitization agreement. No royalty obligation shall accrue on any produced gas which (1) is used on the same lease, same communitized tract, or same unitized participating area for beneficial purposes, (2) is vented or flared with the Supervisor's prior authorization or approval during drilling, completing, or producing operations, (3) is vented or flared pursuant to the rules, regulations, or orders of the appropriate State regulatory agency when said rules, regulations, or orders have been ratified or accepted by the Supervisor, or (4) the Supervisor determines to have been otherwise unavoidably lost.

Where produced gas (both gas well gas and oil well gas) is (1) vented or flared during drilling, completing, or producing operations without the prior authorization, approval, ratification, or acceptance of the Supervisor or (2) otherwise avoidably lost, as determined by the Supervisor, the compensation due the United States or the Indian lessor will be computed on the basis of the full value of the gas so wasted, or the allocated portion thereof, attributable to the lease.

II. DEFINITIONS

As used in this Notice, certain terms are defined as follows:

   A. "Avoidably lost" production shall mean the venting or flaring of produced gas without the prior authorization, approval, ratification, or acceptance of the Supervisor and the loss of produced oil or gas when the Supervisor determines that such loss occurred as a result of (1) negligence on the part of the lessee or operator, or (2) the failure of the lessee or operator to take all reasonable measures to prevent and/or to control the loss, or (3) the failure of the lessee or operator to comply fully with the applicable lease terms and regulations, appropriate provisions of the approved operating plan, or the prior written orders of the Supervisor, or (4) any combination of the foregoing.

   B. "Beneficial purposes" shall mean that oil or gas which is produced from a lease, communitized tract, or unitized participating area and which is used on or for the benefit of that same lease, same communitized tract, or same unitized participating area for operating or producing purposes such as (1) fuel in lifting oil or gas, (2) fuel in the heating of oil or gas for the purpose of placing it in a merchantable condition, (3) fuel in compressing gas for the purpose of placing it in a marketable condition, or (4) fuel for firing steam generators for the enhanced recovery of oil. Gas used for beneficial purpose shall also include that which is produced from a lease, communitized tract, or unitized participating area and which is consumed on or for the benefit of that same lease, same communitized tract, or same unitized participating area (1) as fuel for drilling rig engines, (2) as the source of actuating automatic valves at production facilities, or (3) with the prior approval of the Supervisor, as the circulation medium during drilling operations. Where the produced gas is processed through a gasoline plant and royalty settlement is based on the residue gas and other products at the tailgate of the plant, the gas consumed as fuel in the plant operations will be considered as being utilized for beneficial purposes. In addition, gas which is produced from a lease, communitized tract, or unitized participating area and which, in accordance with a plan approved by the Supervisor, is reinjected into wells or formations subject to that same lease, same communitized tract, or same unitized participating area for the purpose of increasing ultimate recovery shall be considered as being used for beneficial purposes; provided, however, that royalty will be charged on the gas used for this purpose at the time it is finally produced and sold.

   C. "Unavoidably lost" production shall mean (1) those gas vapors which are released from storage tanks or other low-pressure production vessels unless the Supervisor determines that the recovery of such vapors would be warranted, (2) that oil or gas which is lost because of line failures, equipment malfunctions, blowouts, fires, or otherwise except where the Supervisor determines that said loss resulted from the negligence or the failure of the lessee or operator to take all reasonable measures to prevent and/or control the loss, and (3) the venting or flaring of gas in accordance with Section III hereof.

III. AUTHORIZED VENTING AND FLARING OF GAS

Lessees or operators are hereby authorized to vent or flare gas on a short-term basis without incurring a royalty obligation in the following circumstances:

   A. Emergencies. During temporary emergency situations, such as compressor or other equipment failures, relief of abnormal system pressures, or other conditions which result in the unavoidable short-term venting or flaring of gas. However, this authorization to vent or flare gas in such circumstances without incurring a royalty obligation is limited to 24 hours per incident

and to 144 hours cumulative for the lease during any calendar month, except with the prior authorization, approval, ratification, or acceptance of the Supervisor.

B. Well Purging and Evaluation Tests. During the unloading or cleaning up of a well during drillstem, producing, routine purging, or evaluation tests, not exceeding a period of 24 hours.

C. Initial Production Tests. During initial well evaluation tests, not exceeding a period of 30 days or the production of 50 MMcf of gas, whichever occurs first, unless a longer test period has been authorized by the appropriate State regulatory agency and ratified or accepted by the Supervisor.

D. Routine or Special Well Tests. During routine or special well tests, other than those cited in III.B and C above, only after approval by the Supervisor.

IV. OTHER VENTING OR FLARING

A. Gas Well Gas. Except as provided in II.C and III above, gas well gas may not be flared or vented. For the purposes of this Notice, a gas well will be construed as a well from which the energy equivalent of the gas produced, including its entrained liquid hydrocarbons, exceeds the energy equivalent of the oil produced.

B. Oil Well Gas. Except as provided in II.C and III above, oil well gas may not be vented or flared unless approved in writing by the Supervisor. The Supervisor may approve an application for the venting or flaring of oil well gas if justified either by the submittal of (1) an evaluation report supported by engineering, geologic, and economic data which demonstrates to the satisfaction of the Supervisor that the expenditures necessary to market or beneficially use such gas are not economically justified and that conservation of the gas, if required, would lead to the premature abandonment of recoverable oil reserves and ultimately to a greater loss of equivalent energy than would be recovered if the venting or flaring were permitted to continue or (2) an action plan that will eliminate venting or flaring of the gas within 1 year from the date of application.

The venting or flaring of gas from oil wells completed prior to the effective date of this Notice is authorized for an interim period. However, an application for approval to continue such practices must be submitted within 90 days from the effective date hereof, unless such venting or flaring of gas was authorized, approved, ratified, or accepted previously by the Supervisor. For oil wells completed on or after the effective date of this Notice, an application must be filed with the Supervisor, and approval receive, for any venting or flaring of gas beyond the initial 30-day or other authorized test period.

C. Content of Applications. Applications under section B above shall include all appropriate engineering, geologic, and economic data in support of the applicant's determination that conservation of the gas is not viable from an economic standpoint and, if approval is not granted to continue the venting or flaring of the gas, that it will result in the premature abandonment of oil production and/or the curtailment of lease development. The information provided shall include the applicant's estimates of the volumes of oil and gas that would be produced to the economic limit if the application to vent or flare were approved and the volumes of the oil and gas that would be produced if the applicant was required to market or beneficially use the gas. When evaluating the feasibility of requiring conservation of the gas, the total leasehold production, including both oil and gas, as well as the economics of a fieldwide plan shall be considered by the Supervisor in determining whether the lease can be operated successfully if it is required that the gas be conserved.

V. REPORTING AND MEASUREMENT RESPONSIBILITIES

The volume of oil or gas produced, whether sold, avoidably or unavoidably lost, vented or flared, or used for beneficial purposes (including gas that is reinjected) must be reported on Form 9-329, Monthly Report of Operation, in accordance with the requirement of this Notice and the applicable provisions of NTL-1 and NTL-1A. The volume and value of all oil and gas which is sold, vented or flared without the authorization, approval, ratification, or acceptance of the Supervisor, or which is otherwise determined by the Supervisor to be avoidably lost must be reported on Form 9-361, Monthly Report of Sales and Royalties. Payments submitted in this respect must be accompanied by a Form 9-614-A, Rental and Royalty Remittance Advice.

In determining the volumes of oil and gas to be reported in accordance with the first and second paragraphs of this Section V, lessees and operators shall adhere to the following:

1. When the amount of oil or gas involved has been measured in accordance with Title 30 CFR 221.43 or 221.44, that measurement shall be the basis for the volume reported.

2. When the amount of oil and gas avoidably or unavoidably lost, vented or flared, or used for beneficial purposes occurs without measurement, the volume of oil or gas shall be determined utilizing the following criteria, as applicable:

   a. Last measured throughput of the production facility.

   b. Duration of the period of time in which no measurement was made.

   c. Daily lease production rates.

   d. Historic production data.

   e. Well production rates and gas&oil ratio tests.

   f. Productive capability of other wells in the area completed in the same formation.

   g. Subsequent measurement or testing, as required by the Supervisor.

   h. Such other methods as may be approved by the Supervisor.

The Supervisor may require the installation of additional measurement equipment whenever it is determined that the present methods are inadequate to meet the purposes of this Notice.

VI. VALUE DETERMINATIONS FOR ROYALTY OR COMPENSATION PURPOSES

In computing the royalty or compensation due on oil or gas under the provisions of this Notice, the value shall be computed in the same manner as the Supervisor would have calculated the value of the oil or gas had it been sold from the same lease, same communitized tract, or same unitized participating area.

VII. COMPLIANCE

The failure to comply with the requirements of this Notice will result in compliance being secured by such actions as are provided by law and regulation.

| January 1, 1980 | /s/ C.J. Curtis |
|---|---|
| Date | C.J. Curtis |
|  | Oil and Gas Supervisor |
|  | Northern Rocky Mountain Area |

Approved:


/s/ Hillary A. Oden
_____
Hillary A. Oden
Acting Chief, Conservation Division


---

ADDENDUM TO NTL-4A

Refund Applications

Certain provisions of NTL-4 have been revoked retroactive to December 1, 1974, the effective date of said Notice. Accordingly, lessees and operators who submitted royalty payments under the provisions of NTL-4 may apply for a refund of those payments made for (1) oil that was unavoidably lost or used for beneficial purposes on the lease, communitized tract, or unitized participating area from which it was produced and/or (2) gas that was vented or flared with the prior approval of the Supervisor or unavoidably lost. No refunds will be processed in the absence of such an application, and no refunds will be made of those payments submitted on the basis of a determination of waste by the Supervisor. In addition, liquidated damages assessed for the late filing of reports or the failure to report pursuant to the provisions of NTL-4 will not be refunded.

The application shall be in the form of a letter signed by an authorized officer or agent of the lessee or operator and for each individual lease shall include:

1. The lease prefix code and lease number.

2. The month and year.

3. The product code (01, 02, 03, 04, 41, or 43) used in the report and payments previously submitted to the Supervisor.

4. The volume of lost oil and/or gas previously reported and the amount of the refund requested.

5. The total amount of the refund requested for each lease as a subtotal.

6. The total amount of the refund requested for all leases as a grand total.

Additional instructions in regard to the filing and contents of said applications may be obtained by contacting the Supervisor having jurisdiction over the lease or leases involved.

Refund applications will be processed as promptly as possible. The Supervisor, as to Federal leases, may process a direct refund or authorize the applicant to withhold the refund amount from future royalty accruals. However, refunds authorized by the Supervisor with respect to Indian leases will be recoverable only as a credit against future rental or royalty accruals in accordance with the provisions of Section IX (Overpayments) of NTL-1A.

Last updated: 05-11-2007

USA.GOV | No Fear Act | DOI | Disclaimer | About BLM | Notices | Social Media Policy
Privacy Policy | FOIA | Kids Policy | Contact Us | Accessibility | Site Map | Home

http://www.blm.gov/wy/st/en/programs/energy/Oil_and_Gas/docs/ntl_4a.html                7/29/2014