**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

| | | |
|---|---|---|
| Kodiak Oil & Gas (USA) Inc., now known as Whiting Resources Corporation and HRC Operating, LLC, | ) ) ) ) | |
| Plaintiffs, | ) ) | **ORDER GRANTING PLAINTIFFS' MOTIONS FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANTS' MOTIONS TO DISMISS** |
| vs. | ) ) ) | |
| Jolene Burr, Ted Lone Fight, Georgianna Danks, Edward S. Danks, and Mary Seaworth, in her capacity as Acting Chief Judge of the Fort Berthold District Court, | ) ) ) ) ) ) | Case No. 4:14-cv-085 |
| Defendants. | ) | |

| | | |
|---|---|---|
| EOG Resources, Inc., | ) ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) ) | |
| Mary Seaworth, in Her Capacity as Acting Chief Judge of the Three Affiliated Tribes District Court of the Forth Berthold Indian Reservation, Yvette Falcon, in her capacity As Court Clerk/Consultant of the Three Affiliated Tribes District Court of the Fort Berthold Indian Reservation, Jolene Burr, Ted Lone Fight, Georgianna Danks, and Edward S. Danks, | ) ) ) ) ) ) ) ) ) ) ) | Case No. 4:14-cv-087 |
| Defendants. | ) | |

Before the Court are three separate motions for preliminary injunctive relief filed by

Kodiak Oil & Gas (USA), Inc., now known as Whiting Resources Corporation, HRC Operating,

LLC, and EOG Resources, Inc. See Docket Nos. 29, 58, (Case No. 4:14-cv-085) and 26 (Case

No. 4:14-cv-087).[1]  The motions have been fully briefed by the parties and a hearing on the motions was held on March 13, 2018, in Bismarck, North Dakota.  See Docket No. 67.  Also before the Court are several motions to dismiss the complaints of Kodiak Oil, HRC Operating, and EOG Resources ("Plaintiffs").  See Docket Nos. 44, 52 (Case No. 4:14-cv-085) and 31 (Case No. 4:14-cv-087).  For the reasons set forth below, the Plaintiffs' motions for preliminary injunction (Docket Nos. 29 & 58 (Case No. 4:14-cv-085) and 26 (Case No. 4:14-cv-087)) are granted and the motions to dismiss the Plaintiffs' complaints (Docket Nos. 44, 52 (Case No. 4:14-cv-085) and 31 (Case No. 4:14-cv-087)) are denied.

## I.    BACKGROUND

On July 29, 2014, Kodiak Oil & Gas (USA), Inc., now known as Whiting Resources Corporation ("Kodiak Oil"), filed a complaint against Defendants Jolene Burr, Ted Lone Fight, Georgianna Danks, Edward S. Danks, and Judge Diane Johnson, in her capacity as the Chief Judge of the Fort Berthold District Court, seeking a declaration that the Fort Berthold Tribal Court ("Tribal Court") lacks jurisdiction over a suit filed by Defendants Jolene Burr, Ted Lone Fight, as well as Georgianna Danks and Edward S. Danks[2] in Tribal Court against Kodiak Oil and others.[3] In the underlying Tribal Court action, the Tribal Court Plaintiffs seek to recover royalties pursuant to an Oil & Gas Mining Lease for Kodiak and others' improper flaring of natural gas associated

---

[1] Unless otherwise specified, when referring to docket entries related to Kodiak Oil and/or HRC Operating's claims for declaratory and injunctive relief, such docket entries are found in Case No. 4:14-cv-085.  Similarly, when referring to docket entries related to EOG Resources' claims, such docket entries are located in Case No. 4:14-cv-087, unless otherwise specified.

[2] In reference to the action filed in Tribal Court, the Court will refer to Jolene Burr, Ted Lone Fight, Georgianna Danks, and Edward S. Danks collectively as "Tribal Court Plaintiffs."

[3] Kodiak Oil filed a "First Amended Complaint for Declaratory and Injunctive Relief" with this Court on February 2, 2015.  See Docket No. 17.

with oil wells. Specifically, the Tribal Court Plaintiffs allege they are enrolled members of the Three Affiliated Tribe, owning mineral interests "within the exterior boundaries" of the Fort Berthold Indian Reservation. See Docket No. 27-1 (Case No. 4:14-cv-087). In their second amended complaint, the Tribal Court Plaintiffs allege they entered into a mineral lease – "OIL AND GAS MINING LEASE – ALLOTTED INDIAN LANDS" – with Kodiak Oil and others, and Kodiak and other oil and gas producers breached paragraph 3(f) of the mineral lease. See id. On May 4, 2015, Magistrate Judge Charles S. Miller, Jr. ordered the federal court action brought by Kodiak Oil stayed upon agreement of the parties, "pending further action by the tribal court." See Docket No. 25.

EOG Resources, Inc. ("EOG Resources") also filed a complaint in this Court against Jolene Burr, Ted Lone Fight, Georgianna Danks, Edward S. Danks, and Judge Diane Johnson, in her capacity as the Chief Judge of the Fort Berthold District Court, as well as Yvette Falcon,[4] in her capacity as the Court Clerk/Consultant of the Three Affiliated Tribes District Court of the Fort Berthold Indian Reservation, on August 29, 2014. See Docket No. 6 (Case No. 4:14-cv-087). As a named defendant in the same tribal court action brought against Kodiak Oil, EOG Resources similarly seeks a declaration the Tribal Court lacks jurisdiction over the suit filed by the Tribal Court Plaintiffs in Tribal Court. On May 1, 2015, EOG Resources requested a stay of the federal court action due to its pending motion to dismiss for lack of jurisdiction in the tribal court matter. See Docket No. 18. Consequently, this Court ordered the federal action stayed "pending a ruling

---

[4] In their complaints, both Kodiak Oil and EOG Resources named Diana Johnson, in her capacity as the Chief Judge of the Fort Berthold District Court, as a defendant. See Docket Nos. 1 (Case No. 4:14-cv-085) and 1 (Case No. 4:14-cv-087). In a "Notice of Special Appearance" filed by counsel for Defendant Johnson, counsel indicated Diana Johnson is no longer the Chief Judge of the Fort Berthold District Court. The current Acting Chief Judge of the Fort Berthold District Court is Mary Seaworth. Pursuant to Federal Rule of Civil Procedure 25(d) Mary Seaworth is automatically substituted for Defendant Diana Johnson. See Docket Nos. 31 (Case No. 4:14-cv-085) and 29 (Case No. 4:14-cv-087).

from the Three Affiliated Tribes District Court and a possible appeal from the tribal court decision." <u>See</u> Docket No. 19.

While both federal court actions were stayed, the matter proceeded in the Tribal Court, with Kodiak Oil and others filing motions to dismiss the tribal court action for lack of jurisdiction. <u>See</u> Docket No. 17-3. A hearing on the motions to dismiss was held in Tribal Court on November 18, 2015. <u>See</u> Docket No. 29-1, p. 2. On May 12, 2016, the Tribal Court issued a "Memorandum Opinion" in which the Tribal Court denied the motions to dismiss, concluding the Tribal Court has jurisdiction over the "straight-forward contract action." <u>See</u> Docket No. 27-2, p. 17 (Case No. 4:14-cv-087). Kodiak Oil and others then appealed the decision of the Fort Berthold District Court to the MHA Nation Supreme Court. <u>See</u> Docket No. 27-3(Case No. 4:14-cr-087).

On appeal, the MHA Nation Supreme Court affirmed in part and reversed in part the order of the Fort Berthold District Court. <u>See</u> Docket No. 27-3 (Case No. 4:14-cv-087). The MHA Nation Supreme Court ultimately determined Kodiak Oil, EOG Resources, HRC Operating and other defendants are subject to MHA Nation's "legislative, executive and judicial jurisdiction" because they operate businesses and conduct business activities within the Fort Berthold Reservation. <u>See</u> Docket No. 27-3, p. 2 (Case No. 4:14-cv-087). The MHA Nation Supreme Court first decided "*Montana's* rule and exceptions do not apply here, where the challenged non-Indian Petitioner's activities were all taken on Indian allotments held in trust." <u>Id.</u> at 5. Essentially, the MHA Nation Supreme Court construed *Montana v. United States*, 450 U.S. 544 (1981) narrowly to apply to lands within a reservation not owned by the Tribe or its members. <u>Id.</u> at 3-5. However, the MHA Nation Supreme Court continued, and determined if *Montana* applies, the Tribal Court has jurisdiction over the matter based upon the 'consensual relationship' exception to the *Montana* rule, evinced "by the oil and gas leases executed by and between oil and gas companies and the

individual Indian allotees." See Docket No. 27-3, p. 6. The MHA Nation Supreme Court also concluded the federal regulatory scheme of oil and gas leases for allotted lands does not preclude the Fort Berthold District Court from exercising its jurisdiction over the matter. Nonetheless, the MHA National Supreme Court ultimately determined "judicial review is premature at this juncture because [the Tribal Court Plaintiffs] have not exhausted their administrative remedies." Id. at 20. After the MHA Nation Supreme Court issued its order, the Tribal Court Plaintiffs filed a motion for class certification. See Docket No. 29-10 (Case No. 4:14-cv-085).

Shortly after the MHA Nation Supreme Court issued its order finding the Fort Berthold District Court has jurisdiction over the matter, Kodiak and EOG Resources filed motions for a preliminary injunction with this Court. In their motions, Kodiak and EOG request the Court issue a preliminary injunction preventing the Defendants from proceeding further with the underlying Tribal Court action. Defendants Mary Seaworth, in her capacity as Acting Chief Judge of the Fort Berthold District Court, and Yvette Falcon, in her capacity as Court Clerk/Consultant of the Three Affiliated Tribes District Court of the Fort Berthold Indian Reservation ("Tribal Court Defendants"), then filed motions to dismiss Kodiak Oil and EOG Resources' complaints.[5] See Docket Nos. 44 (Case No. 4:14-cv-085) and 31 (Case No. 4:14-cv-087). In their motions to dismiss, the Tribal Court Defendant contend the actions filed in this Court should be dismissed because the Court lacks jurisdiction over them.

During the time period to brief the motions for preliminary injunction and motions to dismiss, HRC Operating, LLC ("HRC Operating") filed a motion to intervene in the matter because of its status as a defendant in the Tribal Court action. See Docket No. 36 (Case No. 4:14-

---

[5] A motion to dismiss HRC Operating's complaint was also filed on February 22, 2018. See Docket No. 52 (Case No. 4:14-cr-085). However, on that date, HRC Operating had not yet filed a complaint. Nonetheless, the Court will treat the motion to dismiss prematurely filed as seeking dismissal of HRC Operating's complaint filed on February 26, 2018.

cv-085).  On February 26, 2018, the Court granted HRC Operating's motion to intervene.  See

Docket No. 56.  That same day, HRC Operating filed its complaint against Defendants Jolene Burr,

Ted Lone Fight, Georgianna Danks, Edward S. Danks, and Judge Mary Seaworth, in her capacity

as Acting Chief Judge of the Fort Berthold District Court, as well as a motion for preliminary

injunctive relief.  See Docket Nos. 57 and 58.  On February 27, 2018, the Court consolidated

*Kodiak Oil & Gas (USA), Inc., et al. v. Burr, et al.*, Case No. 4:14-cv-085, with *EOG Resources

Inc. v. Seaworth, et al.*, Case No. 4:14-cv-087.  See Docket No. 60.


### III.    LEGAL DISCUSSION

Before the Court may grant a preliminary injunction, the Court must be satisfied it has

jurisdiction over the matter. Consequently, the Court first addresses the jurisdictional concerns

raised by the Tribal Court Defendants in their motions to dismiss.


### A.    FEDERAL COURT JURISDICTION

The substantive claims of the Plaintiffs rest upon the determination of whether the Tribal

Court has jurisdiction over the underlying tribal court action.  It is well recognized that the question

of "[w]hether a tribal court has adjudicative authority over nonmembers is a federal question."

Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 324 (2008).

Consequently, pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction.  See 28 U.S.C. §

1331.  Nonetheless, in their motions to dismiss and responses to the motions for preliminary

injunction, the Tribal Court Defendants assert this Court lacks jurisdiction because:  (1) Judge

Seaworth and Falcon are immune from suit and (2) the Plaintiffs failed to exhaust tribal remedies

before bringing this federal action.

1. **SOVEREIGN IMMUNITY OF JUDGE SEAWORTH AND FALCON**

In the Eighth Circuit, sovereign immunity presents a jurisdictional question.  Hagen v. Sisseton-Wahpeton Cmty. Coll., 205 F.3d 1040, 4043 (8th Cir. 2000).  It has been long been recognized that Indian Tribes possess "common-law immunity from suit traditionally enjoyed by sovereign powers."  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59 (1978).  Indian tribes may not be sued absent an express and unequivocal waiver of immunity by the tribe or "abrogation of tribal immunity by Congress."  Baker Elec. Coop. v. Chaske, 58 F.3d 1466, 1471 (8th Cir. 1994).

A tribe's sovereign immunity certainly extends to tribal officers or agencies. Hagen, 205 F.3d at 1043 (citing Dillon v. Yankton Sioux Tribe Housing Auth., 144 F.3d 581, 583 (8th Cir. 1998)).  However, the United States Supreme Court has held tribal officers are not protected by the tribe's immunity from suits for declaratory or injunctive relief.  Santa Clara Pueblo, 436 U.S. at 59.  Moreover, the Eighth Circuit has recognized a tribe's sovereign immunity is subject to the well-established exception expressed in *Ex Parte Young*, 209 U.S. 123 (1908) that "a suit challenging the constitutionality of a state official's action is not one against the State."  Baker Elec. Coop., 28 F.3d at 1471.  Consequently, tribal officers may be liable to suit when the complaint alleges

> the named officer defendants have acted outside the amount of authority that the sovereign is capable of bestowing, an exception to the doctrine of sovereign immunity is invoked. . . . If the sovereign did not have the power to make a law, then the official by necessity acted outside the scope of his authority in enforcing it . . . .

N. States Power Co. v. Prairie Island Mdewakanton Sioux Indian Cmty, 991 F.2d 458, 460 (8th Cir. 1993) (quoting Tenneco Oil Co. v. Sac & Fox Tribe of Indians, 725 F.2d 572, 574 (10th Cir. 1984)).

Judge Seaworth and Falcon contend that as tribal court officers they are cloaked in sovereign immunity as there has been no express and unequivocal waiver of immunity by the Tribe. In fact, Judge Seaworth and Falcon assert the Plaintiffs filed suit against them, in their official capacities, to evade the Tribe's immunity since the Plaintiffs' claims seek "relief from the imposition of the tribal law including the resolution entitled, *Regulation of Flaring of Gas, Imposition of Tax, Payment of Royalties and Other Purposes*." <u>See</u> Docket No. 1-2 (Case No. 4:14-cv-085). In their complaints, Kodiak Oil, EOG Resources, and HRC Operating seek only injunctive and declaratory relief against the Tribal Court Defendants. Pursuant to the holding of <u>Santa Clara Pueblo</u>, 436 U.S. at 59, tribal officials are not protected by the tribe's immunity in this type of suit for declaratory and injunctive relief. Each of the Plaintiffs allege the Tribal Court Defendants, in their official capacities, acted unlawfully by permitting the underlying Tribal Court action to proceed. This Court's exercise of jurisdiction over Judge Seaworth, in her capacity as Acting Chief Judge of the Fort Berthold District Court, and Yvette Falcon, in her capacity as Court Clerk/Consultant of the Three Affiliated Tribes District Court of the Fort Berthold Indian Reservation, is warranted as they are not immune from suit. <u>See</u> <u>Michigan v. Bay Mills Indian Cmty.</u>, 134 S. Ct. 2024, 2035 (2014) (concluding "tribal immunity does not bar such a claim for injunctive relief against individuals, including tribal officers, responsible for unlawful conduct").

### 2.      <u>FAILURE TO EXHAUST TRIBAL REMEDIES</u>

The Tribal Court Defendants also contend this Court lacks jurisdiction over this matter because Kodiak Oil, EOG Resources, and HRC Operating are required to exhaust tribal remedies before filing a federal suit, citing *National Farmers Union Ins. Cos. V. Crow Tribe of Indians*, 471 U.S. 845 (1985) ("*National Farmers*"). At the hearing on the motions for preliminary injunction,

counsel for the Tribal Court Defendants specifically argued Kodiak Oil, EOG Resources, and HRC Operating are required to bring a factual challenge to the Tribal Court's jurisdiction and a factual determination of jurisdiction, as opposed to a facial determination, is to be made by the Tribal Court before tribal remedies are exhausted. The law in the Eighth Circuit requires no such factual challenge to jurisdiction in order to effectively exhaust tribal remedies before filing a federal suit.

In *Strate v. A-1 Contractors*, the United States Supreme Court concluded *National Farmers* cannot be read to require exhaustion of tribal remedies: "we do not extract from *National Farmers* anything more than a prudential exhaustion rule . . . ." 520 U.S. 438, 450 (1997). Since the United States Supreme Court's decision in *Strate*, the Eighth Circuit has not required litigants to adjudicate the full merits of a case in tribal court before a federal court can exercise jurisdiction. Instead, "[a] federal court should stay its hand until after the Tribal Court has had a full opportunity to determine its own jurisdiction," but exhaustion of tribal remedies is not required, when it would serve no purpose other than delay. Belcourt Pub. Sch. Dist. v. Herman, 786 F.3d 653, 656 n. 2 (8th Cir. 2015). See also Nevada v. Hicks, 533 U.S. 353, 369 (2001).

Here, the Tribal Court "had a full opportunity to determine its own jurisdiction." See Belcourt Pub. Sch. Dist., 786 F.3d at 656 n. 2. In *Belcourt Pub. Sch. Dist.*, the Eighth Circuit noted that non-members exhausted their tribal remedies upon the tribal appellate court determination of jurisdiction. Id. Both the Fort Berthold District Court and the MHA Nation Supreme Court determined they had jurisdiction over Kodiak Oil, EOG Resources, and HRC Operating. Upon completion of the MHA Nation Supreme Court's review, "all requisite tribal remedies were exhausted" and the doors of the federal court were thus opened for Kodial Oil, EOG Resources, and HRC Operating. See id. Based upon the foregoing, the Court is satisfied it has jurisdiction to address whether the Tribal Court had adjudicative authority over the underlying claim for breach

of a mineral lease entered into pursuant to 25 U.S.C. § 396. See Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 324 (2008).[6] The Court then turns to this inquiry.

### B.     TRIBAL COURT JURISDICTION

In their complaints, Kodiak Oil, EOG Resources, and HRC Operating seek both declaratory and injunctive relief preventing the Tribal Court from exercising jurisdiction over the underlying Tribal Court action and preventing the Tribal Court Plaintiffs from proceeding with the underlying Tribal Court action. See Docket Nos. 17, 57, (Case No. 4:14-cv-085) and 6 (Case No. 4:14-cv-087). Consequently, in their motions for preliminary injunctive relief, Kodiak Oil, EOG Resources, and HRC Operating request a preliminary injunctive because the Tribal Court lacks jurisdiction over them.

It is well-established that the movant has the burden of establishing the necessity of a temporary restraining order or a preliminary injunction. Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994). "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Id. at 1472. Kodiak Oil, EOG Resources, and HRC Operating, by separate motion, each seek a preliminary injunction pursuant to Rule 65(a) of the Federal Rules of Civil Procedure. The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing. Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984). A preliminary injunction is an extraordinary remedy, with the burden of

---

[6] In their motions to dismiss, the Tribal Court Defendants also contend this matter must be dismissed because the Three Affiliated Tribes is a necessary and indispensable party to the action, but cannot be joined. See Docket No. 45, p. 19 (Case No. 4:14-cv-085). Whether a party is required to be joined pursuant to Rule 19 of the Federal Rules of Civil Procedure does not present a threshold jurisdictional question. Consequently, at this juncture, the Court declines to pass on the merits of whether the Three Affiliated Tribes should be joined as a party.

establishing the necessity of a preliminary injunction placed on the movant. <u>Watkins Inc. v. Lewis</u>, 346 F.3d 841, 844 (8th Cir. 2003); <u>Baker Elec. Coop., Inc. v. Chaske</u>, 28 F.3d 1466, 1472 (8th Cir. 1994); <u>Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.</u>, 871 F.2d 734, 737 (8th Cir. 1989). The court determines whether the movant has met its burden of proof by weighing the factors set forth in <u>Dataphase Systems, Inc., v. C L Systems</u>, Inc., 640 F.2d 109, 114 (8th Cir. 1981). The *Dataphase* factors include "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." <u>Id</u>. "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." <u>Baker Elec. Coop., Inc.</u>, 28 F.3d at 1472 (quoting <u>Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.</u>, 815 F.2d 500, 503 (8th Cir. 1987)); <u>see</u> <u>CDI Energy Servs., Inc. v. W. River Pumps, Inc.</u>, 567 F.3d 398, 401-03 (8th Cir. 2009).

## 1. <u>PROBABILITY OF SUCCESS ON THE MERITS</u>

When evaluating a movant's likelihood of success on the merits, the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" <u>Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc.</u>, 815 F.2d 500, 503 (8th Cir. 1987). At this stage, the Court need not decide whether the party seeking the preliminary injunction will ultimately prevail. <u>PCTV Gold, Inc. v. SpeedNet, LLC</u>, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order or a preliminary injunction cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a

'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992).

The Court must consider the substantive claims in determining whether the Plaintiffs have a likelihood of success on the merits. All three plaintiffs assert claims of declaratory and injunctive relief. See Docket Nos. 17, 57, (Case No. 4:14-cv-085) and 6 (Case No. 4:14-cv-087). Specifically, the Plaintiffs seek a judgment declaring that the Tribal Court lacks jurisdiction over them and enjoining the Defendants from prosecuting the underlying action in Tribal Court. Id. A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of success" *Dataphase* factor. See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

In their motions for preliminary injunction, the Plaintiffs contend they are able to demonstrate a strong likelihood of success on the merits of their claims because: (1) the underlying action gives rise to a federal question over which tribal courts lack jurisdiction, and, alternatively, (2) the United States Supreme Court decision in *Montana v. United States*, 450 U.S. 544 (1981) precludes the Tribal Court from exercising jurisdiction over the Plaintiffs. HRC Operating also contends the Tribal Court lacks jurisdiction over the underlying action because the Defendants failed to exhaust administrative remedies and failed to join the United States as a party to the Tribal Court action. See Docket No. 59, pp. 9-11. In response to the motions for preliminary injunctive relief, the Tribal Court Defendants contend this Court lacks jurisdiction over the case before it because (1) the Plaintiffs failed to exhaust tribal court remedies, Judge Seaoworth and Yvette Falcon are protected from suit by sovereign immunity, and (3) the Plaintiffs failed to join the Tribe

as a necessary and indispensable party to this suit.  See Docket Nos. 48 (Case No. 4:14-cv-085) and 33 (Case No. 4:14-cv-087) .  In their response to the motion for preliminary injunction, Defendants Jolene Burr, Ted Lone Fight, Georgianna Danks, and Edward S. Danks assert the Tribal Court correctly determined its jurisdiction in the underlying action under the "consensual relationship" exception to general *Montana* rule as tribal courts are not precluded from hearing cases that present federal questions.  See Docket No. 46 (Case No. 4:14-cv-085) and 30 (Case No. 4:14-cv-087).  The Court finds the Plaintiffs have a strong likelihood of success on the merits of theirs claims against the Defendants.

In their motions, the Plaintiffs contend they are able to demonstrate a strong likelihood of success on the merits of their claims because:  (1) the underlying action gives rise to a federal question over which tribal courts lack jurisdiction, and, alternatively, (2) the United States Supreme Court decision in *Montana v. United States*, 450 U.S. 544 (1981) precludes the Tribal Court from exercising jurisdiction over the Plaintiffs.  Specifically, the Plaintiffs contend that pursuant to the United States Supreme Court decision of *Nevada v. Hicks*, 533 U.S. 353 (2001), tribal courts may not exercise jurisdiction over the federal question presented in the underlying action.  Alternatively, the Plaintiffs contend none of the exceptions to the *Montana* general rule apply to justify the Tribal Court's exercise of jurisdiction over the oil and gas companies.

In response, the Defendants present several arguments vesting jurisdiction over this matter with the Tribal Court.  Specifically, the Tribal Court Defendants assert this Court lacks jurisdiction over the matter and the Tribal Court has authority to adjudicate the issues raised in the underlying action, namely the interpretation of an oil and gas lease premised on federal law.  See Docket No. 33 (Case No. 4:14-cv-087).  The Tribal Court Defendants also assert the Tribal Court may exercise jurisdiction over a breach of contract action brought by a tribal member against a non-member

when the breach occurred within the reservation. Defendants Jolene Burr, Ted Lone Fight, Georgianna Danks, and Edward S. Danks contend the federal regulatory scheme applicable to the oil and gas leases entered into by allottees and the Plaintiffs does not preclude the Tribal Court from exercising jurisdiction over the interpretation of such leases. Moreover, the exceptions to the *Montana* rule vest jurisdiction over the matter with the Tribal Court.

### i.    The Precedent of United States Supreme Court

The Court first addresses the Plaintiffs' contention that pursuant to the United States Supreme Court decision of *Nevada v. Hicks*, 533 U.S. 353 (2001), tribal courts are precluded from exercising jurisdiction over the federal question presented in the underlying action. In *Hicks*, the United States Supreme Court addressed a tribal court's jurisdiction over a state officer enforcing state law on a reservation. 533 U.S. 353 (2001). In *Hicks*, a Nevada state game warden obtained a search warrant from state court for Hick's property after the warden became suspicious of Hicks killing a California bighorn sheep, a gross misdemeanor, off the reservation. Id. at 356. The state search warrant he obtained required the approval of the tribal court before the game warden could execute the warrant. A search warrant was then obtained from the tribal court. The game warden, accompanied by a tribal police officer, searched Hicks' property, but did not locate the head of any California bighorn sheep. One year later, the warden again obtained a state search warrant for Hicks' property; however, the warrant did not require permission from the tribal court to execute. Nonetheless, the game warden obtained a tribal court search warrant and searched Hicks' property, but was again unsuccessful.

Hicks then bought suit against the tribal court judge, tribal officers, the state wardens, in their individual and official capacities, and the State of Nevada in tribal court for trespass to land

and chattels, abuse of process, and violation of civil rights, each remediable under 42 U.S.C. § 1983. Id. at 356-57. During the tribal court proceedings, Hicks' claims against all defendants but the state officials in their individual capacities were either voluntarily dismissed or dismissed by the Court. The state officials and Nevada then filed an action in federal district court, seeking declaratory judgment that the tribal court lacked jurisdiction. The district court granted summary judgment in favor of Hicks and concluded the state officials must exhaust any claims of qualified immunity in the tribal court. The Ninth Circuit Court of Appeals affirmed, concluding the fact that Hicks' property was located on "tribe-owned land within the reservation is sufficient to support tribal jurisdiction over civil claims against nonmembers arising from their activities on that land." Id. at 357. The United States Supreme Court granted certiorari and reversed the decision of the Ninth Circuit, concluding the tribal court lacked jurisdiction.

In determining the tribal court lacked jurisdiction, the Supreme Court in *Hicks* began its analysis by addressing whether the tribe can regulate a state officer executing a state search warrant on the reservation. To answer this inquiry, the Supreme Court looked to the previous decision of *Montana v. United States*, 450 U.S. 544 (1981), and its progeny. It is well-established, "absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances." Strate, 520 U.S. at 445. In the "pathmarking case" of *Montana v. United States*, the United States Supreme Court discussed both the tribes' historical loss of many of its attributes of sovereignty, as a consequence of their incorporation into the United States, and the tribes' retention of inherent authority:

> The areas in which such implicit divestiture of sovereignty has been held to have occurred are those involving relations between an Indian tribe and nonmembers of the tribe . . .

> These limitations rest on the fact that the dependent status of Indian tribes within our territorial jurisdiction is necessarily inconsistent with their freedom

independently to determine their external relations.  But the powers of self-government . . . are of a different type.  They involve only the relations among members of a tribe.  Thus, they are not such powers as would necessarily be lost by virtue of a tribe's dependent status.

450 U.S. at 563-65.  Upon this premise, the Supreme Court in *Montana* concluded the exercise of tribal authority beyond the control of internal relations or protection of tribal self-government, "*cannot survive without express congressional delegation*."  Id. at 565 (emphasis added).  The Supreme Court then articulated the now well-accepted rule that "inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe."  Id.  However, the Supreme Court added that in certain circumstances, even when Congress has not expressly authorized such regulation, Indian tribes retain inherent sovereign authority over non-members:  (1) to regulate, "through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements" and (2) "to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."  Id. at 565-66.

Against this backdrop, the Supreme Court in *Hicks* first recognized the 'consensual relationship' *Montana* exception did not apply to a warden executing a state search warrant within the reservation, and continued to determine whether "regulatory jurisdiction over state officers in the present context is 'necessary to protect tribal self-government or to control internal relations' and if not, whether such regulatory jurisdiction has been congressionally conferred."  533 U.S. 353, 360.  The Court ultimately concluded the state of Nevada's interest in regulating poaching outside the reservation does not impair the tribe's self-government or impede its control of internal relations.  Consequently, pursuant to *Montana*, the tribe's retained inherent sovereign authority

does not extend to regulate a state warden's execution of a state search warrant within the reservation.  Id. at 364.

Concluding that neither *Montana* exception applied, the Supreme Court in *Hicks* then considered whether there had been a delegation of tribal authority by Congress over the state warden executing a state search warrant on the reservation pursuant to 28 U.S.C. § 1983.  Id. at 366-68.  Hicks contended tribal courts are courts of general jurisdiction with authority to entertain a federal action brought pursuant to 28 U.S.C. § 1983.  Id. at 366.  Unlike state courts, where jurisdiction is general, a tribal court's jurisdiction "over nonmembers is at most only as broad as its legislative jurisdiction."  Id. at 367.  While it is true some federal statutes expressly grant tribal courts jurisdiction over issues arising under federal law, no federal law extends tribal courts' jurisdiction to encompass Section 1983 actions.  Thus, in *Hicks*, there was no delegation by Congress of tribal authority to adjudicate in 42 U.S.C. § 1983 actions.

This conclusion by the Supreme Court in *Hicks* was buttressed by the "anomalies" that would be created under the federal removal statute, 28 U.S.C. § 1441, if tribal courts were viewed as courts of general jurisdiction with adjudicative authority over federal questions.  Section 1441 permits a parties to remove a matter from *state* court to federal court if the case involves a federal question.  However, if civil rights actions under Section 1983 could be heard in tribal court, "defendants would inexplicably lack the right available to state-court § 1983 defendants to seek a federal forum."  Id. at 368.

Kodiak Oil, EOG Resources, and HRC Operating assert that this Court should hold an action for breach of a mineral lease entered  into pursuant to the Indian Mineral Leasing Act, 25 U.S.C. § 396, also presents a federal question and, since tribal courts are not court of general jurisdiction pursuant to *Hicks*, the tribal courts lacks jurisdiction over such action.  The Court

agrees with the Plaintiffs that *Hicks* clearly establishes that tribal courts are not courts of general jurisdiction. However, this conclusion, standing alone, does not preclude a tribal court's adjudicative authority over a federal question. Instead, as the United States Supreme Court articulated in *Montana* and its progeny, "a tribe's adjudicative jurisdiction does not exceed its legislative jurisdiction." Strate, 520 U.S. at 453. This statement by the United States Supreme Court encompasses the notion that a tribal court's jurisdiction cannot be general in the same way state courts are courts of general jurisdiction. Thus, although *Hicks* instructs that tribal courts are not courts of general jurisdiction, it is the task of this Court to determine the scope of the Tribal Court's jurisdiction over a breach of mineral lease entered into pursuant to 25 U.S.C. § 396. To do so, the Court turns to the "pathmarking" case of *Montana*.

In *Montana*, the United States Supreme Court articulated the general rule that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," absent express congressional delegation. Montana, 450 U.S. at 565. The Supreme Court in *Montana* then outlined two exceptions to this general rule when tribal jurisdiction may extend to nonmembers:

1)      "A tribe may regulation, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements[,]" and

2)      "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

Id. at 565-66.  These exceptions are "limited ones" and are not to be construed in a manner that "swallows the rule."  Plains Commerce Bank, 554 U.S. at 330 (quoting Atkinson Trading Co. v. Shirley, 532 U.S. 645, 647 (2001).   The United States Supreme Court further explained the mechanics of applying *Montana*'s principles in relation to tribal authority arising under federal statutes or treaties in *Strate*:  "As the Court made plain in *Montana*, the general rule and exceptions there announced govern only in the absence of a delegation of tribal authority by treaty or statute." 520 U.S. at 449.  Absent the applicability of one of the *Montana* exceptions or a delegation of tribal authority in federal law, *Montana*'s general rule applies and precludes the Tribal Court's jurisdiction from extending to the activities of Kodiak Oil, EOG Resources, or HRC Operating as non-members.

### ii.     Tribal Court Jurisdiction Under the First *Montana* Exception

The first exception articulated in *Montana* extends tribal jurisdiction to regulate, through taxation, licensing, or other means, the "activities of nonmembers who enter consensual relationships with the tribe of its members, through commercial dealing, contracts, leases, or other arrangements."  Montana, 450 U.S. at 565.  By its terms, this exception does not grant tribes unlimited regulatory or adjudicative authority over non-members, but instead permits the regulation of *activities*.  Plains Commerce Bank, 554 U.S. at 330.  In *Montana*, the United States Supreme Court referenced four cases in explaining this exception.  See Montana 450 U.S. at 565-66.  Each of those cases cited in *Montana* "involved the regulation of non-Indian activities on the reservation that has a discernible effect on the tribe or its members."  Plains Commerce Bank, 554 U.S. at 330 (discussing those cases cited by the *Montana* Court in support of the first exception to the general rule).  As the United States Supreme Court explained in *Plains Commerce Bank*, the rationale for the *Montana* exceptions was to ensure tribal regulation of certain activities that "may

intrude on the internal relations of the tribe or threaten tribal self-rule." Id. at 335. In fact, in *Plains Commerce Bank*, the United States Supreme Court determined a tribal court lacked jurisdiction over a discrimination claim that arose from a sale of land because regulation of such a sale was not an "activity" that implicated the tribe's sovereign interests. Id. at 335-36. The plaintiffs' discrimination claim arose out of a land sale of non-Indian fee land within the reservation to a non-member. Under these circumstances, the United States Supreme Court reasoned the non-Indian fee land was no longer tribal trust land and "had been removed from the tribe's immediate control." Id. at 336.

It is clear under the United States Supreme Court's analysis in *Plains Commerce Bank*, the first *Montana* exception is triggered when a non-member has a consensual relationship with the tribe or its members and such activities arising from the consensual relationship implicate the tribe's sovereign interests. Following the rationale of *Montana* and *Plains Commerce Bank*, this Court concludes that the tribe's regulation of the mineral lease allegedly breached by Kodiak Oil, EOG Resources, and HRC Operating does not implicate the tribe's sovereign interests and, therefore, even presuming consensual relationships between members of the tribe and the Plaintiffs exist, the first *Montana* exception is not triggered.

In the underlying tribal court action, Jolene Burr, Ted Lone Fight, Georgianna Danks and Edward S. Danks seek "royalties for past, present and future flared gas pursuant to the Oil and Gas Mining lease paragraph 3(f)." See Docket No. 27-1 (Case No. 4:14-cv-087). Paragraph 3(f) of the form leases provides, in relevant part:

> In consideration of the foregoing, the lessee hereby agrees:
>
> (f) Diligence, prevention or waste – To exercise reasonable diligence in drilling and operating wells for oil and gas on the lands covered hereby, while such products can be secured in paying quantities; to carry on all operations hereunder in a good

and workmanlike manner in accordance with the approved methods and practice, having due regard for the prevention of waste of oil or gas developed on the land,

. . .

*Provided*, That the lessee shall not be held responsible for delays or casualties occasioned by causes beyond the lessee's control.

See id. As articulated by counsel for Jolene Burr, Ted Lone Fight, Georgianna Danks and Edward S. Danks, the heart of their tribal court complaint is that companies are unnecessarily and wastefully flaring natural gas instead or capturing, converting, and marketing the natural gas. The mineral leases, entitled "Oil and Gas Mining Lease – Allotted Indian Lands," at issue in the underlying tribal court action are form leases published by the United States Department of Interior and subject to regulations of the Secretary of the Interior. See Docket No. 27-4. Pursuant to 25 U.S.C. § 396, the Secretary of the Interior is authorized to "perform any and all acts and make such rules and regulations as may be necessary" to facilitate mineral leasing by allottees. 25 U.S.C. 396 also conditions the leasing of minerals by allottees as they "may be deemed advisable by the Secretary of the Interior." Id. In fact, the form lease requires the signature of a representative of the Bureau of Indian Affairs ("BIA"). See Docket No. 27-4, p. 4 (Case No. 4:14-cv-087).

Pursuant to the authority granted under the Mineral Leasing Act of 1938 and the Indian Mineral Development Act of 1982, the Department of the Interior promulgated an extensive and comprehensive scheme, including regulations, Onshore Oil and Gas Orders, and NTLs governing all aspects of oil and gas operations on federal Indian lands. See 25 U.S.C. §§ 396a - 396g; 25 C.F.R. Parts 211, 212, 214; 43 C.F.R. Part 3160, §§ 3161.4, 3161.2. At the time the underlying lawsuit was filed with the Tribal Court, this scheme included the following flaring standards set forth in NTL-4A:

Gas Production (both gas well gas and oil well gas) subject to royalty shall include that which is produced and sold on a lease basis or for the benefit of a lease under the terms of an approved communitization or unitization agreement. No royalty obligation shall accrue on any produced gas which (1) is used on the same lease,

same communitized tract, or same unitized participating area for beneficial purposes, (2) is vented or flared with the Supervisor's prior authorization or approval during drilling, completing, or producing operations, (3) is vented or flared pursuant to the rules, regulations, or orders of the appropriate State regulatory agency when said rules, regulations, or orders have been ratified or accepted by the Supervisor, or (4) the Supervisor determines to have been otherwise unavoidably lost . . . Where produced gas (both gas well gas and oil well gas) is (1) vented or flared during drilling, completing, or producing operations without the prior authorization, approval, ratification, or acceptance of the Supervisor or (2) otherwise avoidably lost, as determined by the Supervisor, the compensation due the United States or the Indian lessor will be computed on the basis of the full value of the gas so wasted, or the allocated portion thereof, attributable to the lease.

See Docket No. 1-3 (Case No. 4:14-cv-085).

As of January 17, 2017, NTL-4A was replaced by federal regulations of flaring, which are applicable to the leases at issue. See 43 C.F.R. § 3179.1. Under those regulations, a royalty "is due on all avoidably lost oil or gas" and not due on any oil or gas "unavoidably lost." 43 C.F.R. § 3179.5. These federal regulations also govern flaring on federal Indian lands, including when loss of oil or gas is avoidable or unavoidable, 43 C.F.R. § 3179.4, when flaring is permitted, 43 C.F.R. §§ 3179.7 through 3179.9, and specific reporting requirements for operators, 43 C.F.R. § 3179.9. Moreover, if a determination is made that royalties are due on flared gas, royalties are paid by companies to the Office of Natural Resources Revenue ("ONRR"). 30 C.F.R. § 1218.100. ONRR then deposits royalties into the U.S. Treasury and provides the BIA with distribution reports covering the interests of Indian allottees. 30 C.F.R. §§ 1219.103 and 1219.104. Based on these reports, the Office of the Special Trustee for American Indians ("OST") pays Indian mineral owners in accordance with their percentage of mineral ownership. If royalties are incorrect or otherwise lacking, ONRR investigates, penalizes, fines, and recovers any outstanding payments. See 30 C.F.R. Parts 1241 and 1243.[7]

---

[7] In its order, the MHA Nation Supreme Court also acknowledged the extensive federal regulatory scheme over flaring of natural gas. Specifically, in its order, the MHA Nation Supreme Court stated:

The extensive federal regulatory scheme applicable to the flaring of natural gas on Indian lands demonstrates the regulation of such flaring and enforcement of regulations lies with the federal government, through its various agencies, and is outside the control of tribes. Notably, as to allotted Indian lands, tribes as sovereignties have no role in the approval of mineral leases, the determination of whether royalties are due for flaring under those leases, or the collection or payment of any royalties due to individual allottees. Consequently, the determination of whether the Plaintiffs breached the mineral leases by failing to pay royalties for flared natural gas is entirely controlled by federal laws and regulations, with the federal government, through its agencies, determining if royalties are due, recovering any royalties that may be due, and distributing any royalties to individual allottees. With such federal government regulation and enforcement, although the alleged flaring unquestionably occurs on allotted lands within the Fort Berthold Reservation, the activity which the Tribal Court Plaintiffs seek a determination does not implicate tribal governance or internal relations. See Plains Commerce Bank, 554 U.S. at 335. Unlike those cases cited in *Montana* in support of the 'consensual relationship' exception, the issue of flaring regulation here is subject entirely to regulation and enforcement by the federal government, not the tribal government.

---

1. With respect to "individually allotted trust lands, mineral leases are governed by regulations found in 25 C.F.R. § 212." See Docket No. 29-9, p. 6 (Case No. 7:14-cv-085).
2. "[T]he BLM's regulations for oil and gas development on Indian land are extensive. Indeed, the very issue presented here – the relationship between the flaring of natural gas from and royalty obligations under development leases – is specifically addressed in the federal regulatory scheme." See Docket No. 29-9, p. 16(Case No. 7:14-cv-085).
3. "Respondents' complaint alleged the Petitioners breached mineral leases executed by the parties under the IMLA [Indian Mineral Leasing Act]. 25 U.S.C. § 396. As indicate[d] above, the IMLA establishes a consistent system of leasing procedures that apply to mineral leases in Indian lands. For oil and gas leases negotiated and executed under the IMLA, the Bureau of Indian Affairs Mineral Development Leasing Regulations apply." See Docket No. 29-9, p.18 (Case No. 7:14-cv-085).
4. "[A]ll of the claims made by the Respondents fall within the regulatory authority of the U.S. Department of Interior, Bureau of Land Management." See Docket No. 29-9, p. 19 (Case No. 7:14-cv-085).

The Court recognizes that while commercial activities on a reservation may certainly affect a tribe's self-governance and even intrude on the internal relations of the tribe, the specific activity from which the Tribal Court Plaintiffs seek relief in their breach of contract action is wholly regulated, determined, and enforced by the federal government. This characteristic of flaring clearly distinguishes it from other commercial activities that occur on a reservation which are subject to regulation by the tribe. There is no immediate control of flaring by the tribe and whether the mineral lease was breached is, without question, a determination left to the federal government.[8]

The Court recognizes the flaring of natural gas occurs on allotted lands within the reservation, but the status of the land as allotted does not prevent the Court from concluding the regulation of flaring occurring on such land does not implicate the tribe's sovereign. The ownership status of the land on which flaring occurs is not dispositive to the issue of whether the activities implicate the tribe's sovereign interests. See Plains Commerce Bank, 554 U.S. at 335-36. In fact, in Hicks, the United States Supreme Court concluded Montana applies to both Indian and non-Indian land. 533 U.S. at 360. Montana's general rule restricts tribal authority over "non-members activities taking place on the reservation," but the general rule's restriction "is particularly strong when on land owned in fee simple by non-Indians." See Plains Commerce Bank, 554 U.S. at 327 (emphasis added). The Court concludes the determination of whether royalties are to be paid for the flaring of natural gas pursuant to a mineral lease entered into by an allottee and an oil and gas company pursuant to 25 U.S.C. § 396 is not the type of consensual

---

[8] The Court notes the complaint brought in Tribal Court is a breach of contract action. See Docket No. 27-1 (Case No. 4:14-cv-087). The Tribal Court Plaintiffs did not bring a cause of action to enforce the Tribal Resolution, *Regulation of Flaring of Gas, Imposition of Tax, Payment of Royalties and Other Purposes*, referred to in the parties' briefing. Because this action is limited to a breach of contract claim, upon which resolution of the claims hinges on the federal government's determination of a breach (i.e. whether flaring was avoidable or unavoidable), the Court does not pass on the question of whether the Tribe's adjudicative authority extends to claims brought pursuant to the Tribal Resolution.

relationship under *Montana*'s first exception over which a tribe may exercise adjudicative authority.

### iii.    <u>Tribal Jurisdiction Under the Second *Montana* Exception</u>

The Court next considers whether *Montana*'s second exception brings this action within the Tribal Court's adjudicative authority. Pursuant to *Montana*, a tribe retains inherent power to exercise authority over the conduct of non-members "when the conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566. In their motions for preliminary injunctive relief, Kodiak Oil, EOG Resources, and HRC Operating contend this second exception does not apply to this matter. However, the Plaintiffs' explanation for why the second exception does not apply is cursory, presumably because the MHA Nation Supreme Court concluded the Tribal Court had jurisdiction pursuant to the first 'consensual relationship' exception to the *Montana* general rule. In their response to the motions for preliminary injunction, Jolene Burr, Ted Lone Fight, Georgianna Danks and Edward S. Danks assert the second *Montana* exception applies here to permit the Tribal Court to exercise jurisdiction. Specifically, they contend the flaring of natural gas by Kodiak Oil, EOG Resources, and HRC Operating in breach of the mineral lease "implies environmental degradation" and, therefore, "threatens the health and welfare of the Tribe." <u>See</u> Docket No. 30, p. 18 (Case No. 4:14-cv-087).

The United States Supreme Court's decisions in *Strate* and *Hicks* dictate a narrow interpretation of the second *Montana* exception. <u>See</u> <u>Hicks</u>, 533 U.S. at 359-61; <u>Strate</u>, 520 U.S. 457-58. Both *Hicks* and *Strate* also caution that the second exception cannot be interpreted to severely shrink *Montana*'s general rule. For example, in considering whether tribal courts may entertain claims against non-members arising out of accidents on state highways within a

reservation, the *Strate* Court acknowledged careless driving on a public highway running through a reservation certainly jeopardizes the safety of the tribal members, but concluded the second exception cannot be interpreted so broadly to bring such claims within the adjudicative authority of the tribal court. *Strate*, 520 U.S. at 457-58. In *Strate*, the Supreme Court cautioned that, read in isolation, the second exception "can be misperceived." Id. at 459. Instead, much like the first exception, the second *Montana* exception must be read in the context of those cases cited to support the exception. See id. at 458-59 (discussing cases cited by *Montana* Court in support of second exception). Ultimately, in *Strate*, the Supreme Court concluded the second exception did not apply because "[n]either regulatory nor adjudicatory authority over the state highway accident at issues is needed to preserve 'the right of reservation Indians to make their own laws and be ruled by them.'" Id. at 459 (quoting Williams v. Lee, 358 U.S. 217, 220 (1959)).

This Court recognizes the flaring of natural gas *may* jeopardize the health of tribal members. However, the Court nevertheless does not interpret the second *Montana* exception to apply to a claim to recover royalties for flaring arising from a mineral lease entered into pursuant to 25 U.S.C. § 396. Here, adjudicative authority over the determination of whether an oil and gas company is to pay royalties for flaring natural gas in this context does not support tribes' right to make their own laws and be governed by them. As discussed previously, the extensive federal regulatory scheme applicable to the flaring of natural gas on Indian lands demonstrates the regulation of such flaring and enforcement of regulations solely lies with the federal government, through its various agencies, and outside the control of tribes. Specifically, the determination of whether the Plaintiffs breached the mineral leases by failing to pay royalties for flared natural gas is controlled by federal laws and regulations, with the federal government, through its agencies, determining whether royalties are due, recovering any royalties that may be due, and distributing

any royalties to individual allottees. Under such circumstances, when a federal agency has the sole discretion to decide the pivotal issue of a matter, neither tribal regulatory nor adjudicative authority over such is needed to preserve "the right of reservation Indians to make their own laws and be ruled by them." Williams, 358 U.S. at 220. Consequently, considering the United States Supreme Court's narrow interpretation of the second *Montana* exception, the Court cannot say this matter falls within the second exception. See Hicks, 533 U.S. at 359-61; Strate, 520 U.S. 457-58. Therefore, the *Montana* rule, and not its exceptions, applies here.

### iv.    Congressional Delegation

In *Montana*, the United States Supreme Court articulated the general rule that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," *absent express congressional delegation*. Montana, 450 U.S. at 565. Given the Court's conclusion the *Montana* general rule, and not its exceptions, applies here, the Court must consider whether there has been a congressional direction enlarging tribal court jurisdiction to include actions brought for breach of a contract entered into pursuant to 25 U.S.C. § 396.[9] Some federal statutes explicitly declare tribal court jurisdiction over certain federal law issues. See e.g., 25 U.S.C. § 1911(a) (declaring tribal court authority to adjudicate child custody disputes under the Indian Child Welfare Act of 1978); 12 U.S.C. § 1715z-13(g)(5) (declaring tribal court authority over mortgage foreclosure actions brought by the Secretary of Housing and Urban Development against homeowners on reservations). It is clear to this Court that no provision in federal law provides for

---

[9] In *Hicks*, Justice Scalia noted the Court must consider tribal court jurisdiction over Section 1983 claims since the Court had already determined the *Montana* exceptions do not extend tribal court jurisdiction to state wardens executing a search warrant of an off-reservation crime. 533 U.S. at 366 n. 7. Such a determination "is based upon *Strate*'s holding that tribal court jurisdiction does not exceed tribal regulatory jurisdiction; and because that holding contained a significant qualifier: 'absent congressional direction enlarging tribal-court jurisdiction.'" Id. (citing Strate, 520 U.S. at 453).

tribal court jurisdiction over a claim for breach of a mineral lease entered into pursuant to 25 U.S.C. § 396, or a determination of whether royalties are to be paid for the flaring of natural gas on Indian lands. With no express congressional delegation of jurisdiction to the tribal court, this Court concludes the tribal court lacks jurisdiction over the claims brought in Tribal Court by Jolene Burr, Ted Lone Fight, Georgianna Danks and Edward S. Danks.

### v.     Joinder of the United States and Exhaustion of Administrative Remedies

HRC Operating also contends the Tribal Court lacks jurisdiction over the underlying action because the Defendants failed to exhaust administrative remedies and failed to join the United States as a party to the tribal action. See Docket No. 59, pp. 9-11. Since the Court has found a strong likelihood of success on at least one of the Plaintiff's claims no further analysis is required at this stage. See Nokota Horse Conservancy, 666 F. Supp. 2d at 1078-80 (finding sufficient likelihood of success on the merits of one claim, without a need to undertake extensive review of other claims). However, the Court notes the question of whether the Tribal Court Plaintiffs were required to exhaust administrative remedies before filing the underlying action presents a distinct, although perhaps parallel, legal question from whether the Tribal Court has jurisdiction over the underlying action. Regardless of whether the Tribal Court Plaintiffs are required to exhaust administrative remedies before filing suit in either tribal court or federal court, in this instance, the Tribal Court has already exercised its jurisdiction. Thus, the scope of the Court's inquiry is limited to the question of whether the Tribal Court had adjudicative authority to exercise such jurisdiction.

In addition, because the Court has already concluded at this stage that the Tribal Court lacks jurisdiction over the underlying action, the Court need not address whether the Tribal Court Plaintiffs failed to join the United States in the Tribal Court action.

Based upon the Court's review of the complaint, the Tribal Court documents, and the relevant case law, the Court finds Kodiak Oil, EOG Resources, and HRC Operating have a strong likelihood of success on at least one of their claims against the Defendants. Consequently, the Court finds Kodiak Oil, EOG Resources, and HRC Operating have demonstrated the "success on the merits" factor weighs in favor of the issuance of a preliminary injunction.

## 2.  IRREPARABLE HARM

Kodiak Oil, EOG Resources, and HRC Operating must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." MKB Mgmt. Corp. v. Burdick, 954 F. Supp. 2d 900, 912 (D.N.D. 2013). The party that seeks a preliminary injunction must show that a significant risk of harm exists. Id. The absence of such a showing is sufficient grounds to deny injunctive relief. Id.

The Plaintiffs argue they will suffer irreparable harm if forced to litigate in Tribal Court, which this Court has determined lacks jurisdiction. The Eighth Circuit Court of Appeals has explained that a district court can presume irreparable harm if the movant has a likelihood of success on the merits. Calvin Klein Cosmetics Corp., 815 F.2d at 505 (citing Black Hills Jewelry Mfg. Co. v. Gold Rush, Inc., 633 F.2d 746, 753  (8th Cir. 1980)). Other courts have concluded a movant would suffer irreparable harm if forced to litigate in a tribal court that likely does not have jurisdiction. See Crowe & Dunleavy, P.C. v. Stidham, 640 F.3d 1140, 1157-58 (10th Cir. 2011) (finding the movant had demonstrated irreparable harm because the tribal court likely lacked jurisdiction and there would be no realistic way to recoup fees expended in tribal court). Consequently, the Plaintiffs would suffer irreparable harm if forced to expend time, effort, and

money in a forum that lacks jurisdiction. The Court finds this *Dataphase* factor weighs in favor of granting a preliminary injunction.

### 3. BALANCE OF HARMS

As outlined above, Kodiak Oil, EOG Resources, and HRC Operative have demonstrated the threat of irreparable harm. The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the injunction's issuance would inflict on other interested parties. See Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor analysis examines the harm to all parties to the dispute and other interested parties, including the public. See Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991).

If the Court does not issue a preliminary injunction preventing the Tribal Court Plaintiffs from proceeding in Tribal Court, Kodiak Oil, EOG Resources, and HRC Operating must then continue to defend against the underlying action in a court which lacks jurisdiction over the matter. However, if the Court issues a preliminary injunction, the Tribal Court Plaintiffs may no longer proceed with their Tribal Court action and must pursue their claims in a different forum. However, they are not left without a remedy. Although the Tribal Court venue would be foreclosed, nothing prevents them from bringing their claims in federal district court pursuant to 28 U.S.C. § 1331. Therefore, the Court finds this *Dataphase* factor weighs in favor of granting a preliminary injunction.

## 4.    PUBLIC INTEREST

Avoiding duplicative legal proceedings in multiple venues is in the public interest. However, the Court is also mindful that it is in the public interest to preserve tribal court adjudicative authority over issues affecting a tribe's internal relations and protecting tribal self-governance. Therefore, the Court finds this factor is neutral. Nonetheless, after a careful review of the entire record and the *Dataphase* factors, the Court finds the Plaintiffs have met their burden under Rule 65(b) of establishing the necessity of a preliminary injunction order.

## IV.    CONCLUSION

After a careful review of the entire record, and a careful consideration of all of the *Dataphase* factors, the Court finds the *Dataphase* factors, when viewed in their totality, clearly weigh in favor of the issuance of a preliminary injunction. The Plaintiffs have met their burden of establishing the necessity of a preliminary injunction.

The Court **GRANTS** Kodiak Oil, EOG Resources, and HRC Operating's motions for preliminary injunction (Docket Nos. 29, 58 (Case No. 4:14-cv-085) and 26 (Case No. 4:14-cv-087)), and **ORDERS** Defendants Jolene Burr, Ted Lone Fight, Georgianna Danks and Edward S. Danks enjoined from further prosecuting the underlying action in Tribal Court and Defendants Judge Mary Seaworth, in her capacity as Acting Chief Judge of the Fort Berthold District Court, and Yvette Falcon, in her capacity as the Court Clerk/Consultant of the Three Affiliated Tribes District Court of the Fort Berthold Indian Reservation, enjoined from exercising jurisdiction over the underlying Tribal Court action until a final determination of the Plaintiffs' claims in federal

court.  Further, the Court **DENIES** the Tribal Court Defendants' motions to dismiss (Docket Nos.

44, 52 (Case No. 4:14-cv-085) and 31 (Case No. 4:14-cv-087)).

**IT IS SO ORDERED**.

Dated this 22nd day of March, 2018.

*/s/ Daniel L. Hovland*
Daniel L. Hovland, District Judge
United States District Court